**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

NOEMI RODRIGUEZ ARCE,

     Plaintiff,

     v.

THE PUERTO RICO OMBUDSMAN MANAGEMENT OFFICE; THE PUERTO RICO OMBUDSMAN OFFICE FOR RETIRED PERSONS AND THE ELDERLY; THE COMMONWEALTH OF PUERTO RICO,

     Defendant.

Civil No. 12-1200 (PG)

---

## OMNIBUS OPINION AND ORDER

The Court is asked to decide whether there was sufficient evidence that an employer had retaliated against an employee for protected conduct.

### I. BACKGROUND

Noemi Rodriguez-Arce started working for the Puerto Rico Ombudsman Office for Retired Persons and the Elderly (Ombudsman's Office) on August 16, 2007. Shortly after she started working for the Ombudsman's Office, Rodriguez-Arce received several documents detailing internal rules and regulations regarding sexual harassment and discrimination in the workplace. The documents outlined the process by which an employee could file an internal complaint of sexual harassment. Rodriguez-Arce worked as a coordinator of programs for the elderly, assigned to the Protection and Defense Program. In this role, Rodriguez-Arce's immediate supervisor was Wilma Cruz-Calo, the program supervisor for the Ombudsman's Office. As an immediate

supervisor, Cruz-Calo was charged with assigning work, approving work schedules, and filing work performance evaluations.

But the relationship between Rodriguez-Arce and Cruz-Calo was not entirely professional.  Starting in 2008, Rodriguez-Arce and Cruz-Calo were involved in an intimate relationship.  An added layer of complexity to this relationship was that Cruz-Calo was also in a long-standing relationship with another member of the Ombudsman's Office, Carmen Ortiz, the Deputy Ombudsman of the Protection and Defense Program.

Rodriguez-Arce alleges that, after she ended their relationship, Cruz-Calo's workplace behavior dramatically changed: Rodriguez-Arce became a target for harassment, intimidation, and persecution from her former intimate.

On October 25, 2010, Cruz-Calo and Ortiz jointly sent Rossana Lopez-Leon, the director of the Ombudman's Office of human resources, a recommendation for disciplinary action against Rodriguez-Arce.

On January 26, 2011, Lopez-Leon issued a letter to Rodriguez-Arce notifying her of a possible suspension from employment and pay because of several workplace violations.  An amended letter was sent in March, detailing Rodriguez-Arce's right to pursue an administrative hearing regarding the allegations of workplace violations.

On May 17, 2011, Rodriguez-Arce submitted a confidential complaint to the Ombudsman's Office detailing her relationship with Cruz-Calo.  While the letter made no explicit references to sexual harassment, it did detail Cruz-Calo's changed attitude following the end of her relationship with Rodriguez-Arce.  Also, in May 2011,

Rodriguez-Arce filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Shortly thereafter, Lopez-Leon requested Rodriguez-Arce take a thirty-day leave of absence.

In August of 2011, Rodriguez-Arce was transferred to a different division of the Ombudsman's Office. This transfer was not a disciplinary action.

In February of 2012, the Ombudsman's Office received a written complaint from a medical provider about Rodriguez-Arce's poor performance. Following an investigation into the complaint, Rodriguez-Arce was suspended for thirty days. In March of 2012, the president of the Puerto Rico Telecommunications Regulatory Board sent a complaint to the Ombudsman's Office complaining about a visit that Rodriguez-Arce had made to the Telecommunications Board's office. During her visit, Rodriguez-Arce displayed erratic and unprofessional behavior. A subsequent investigation by the Ombudsman's Office resulted in the recommendation that Rodriguez-Arce's employment be terminated. On March 16, 2012, Rodriguez-Arce was notified of her termination.

On March 21, 2012, Rodriguez-Arce filed a complaint (Docket No. 1) against the Puerto Rico Ombudsman Management Office, Puerto Rico Ombudsman for the Retired Persons and the Elderly, and the Commonwealth of Puerto Rico. Shortly thereafter, Rodriguez-Arce filed a first (Docket No. 5) and then a second (Docket No. 8) amended complaint. Finally, on May 25, 2012, Rodriguez-Arce filed a third amended complaint. (Docket No. 12.) The defendants filed a motion to dismiss on August 14, 2012. (Docket No. 18.) The Court issued an

opinion and order denying the motion to dismiss but granting the Rodrigues-Arce's request to dismiss the supplemental commonwealth law claims. (Docket No. 24.) On January 22, 2014, the defendants filed a motion for summary judgment. (Docket No. 40). The Court denied the defendants' motion. (Docket No. 72.) The case was heard at trial, with the jury ultimately returning a $115,000 verdict in favor Rodriguez-Arce on her claim for retaliation. (Docket No. 93.) Rodriguez-Arce moved to alter the judgment in order to request equitable relief and pre-judgment interest. (Docket No. 99). Shortly thereafter, in June of 2014, the defendants' moved for judgment as a matter of law. (Docket No. 101.) Subsequently, the defendants' filed an alternative motion for a new trial on the discrete issue of Rodriguez-Arce's claim of retaliation. (Docket No. 108).

## II. <u>LEGAL STANDARD</u>

<u>Rule 50(a)(1)</u>

Judgment as a matter of law is granted only after the Court examines the evidence, as well as all permissible inferences, in the light most favorable to the non-movant and finds a result with which reasonable minds could not disagree. <u>Martinez-Serrano v. Quality Health Services of Puerto Rico, Inc.</u>, 568 F.3d 278, 285 (1st Cir. 2009). The Court may not take into account the credibility of witnesses, resolve evidentiary conflicts, nor ponder the weight of the evidence introduced at trial. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150, (2000). While the Court reviews the record as a whole, it disregards all evidence favorable to the moving party that the jury is not required to believe. Id. at 151.

Rule 59(a)

     Rule 59(a) provides that motions for a new trial may be granted, in an action involving a trial by jury, "for any reason for which a new trial has heretofore been granted in an action at law in federal court."   Fed.R.Civ.P. 59(a).   The First Circuit has generally interpreted this provision to mean that a district court should grant a motion for a new trial only when a jury has reached a seriously erroneous result as evidenced by either the verdict being against the weight of the evidence or to prevent manifest injustice.   <u>Jennings v. Jones</u>, 587 F.3d 430, 436 (1st Cir. 2009).

Rule 59(e)

     Federal Rule of Civil Procedure 59(e) allows a party to move the court to amend its judgment within twenty-eight days after entry of the judgment.   Rule 59(e) relief is granted sparingly.   In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; or (3) in certain other situations, such as an intervening change in controlling law.   <u>Biltcliffe v. CitiMortgage, Inc.</u>, 772 F.3d 925, 930 (1st Cir. 2014)(quoting <u>Global Naps, Inc. v. Verizon New England, Inc.</u>, 489 F.3d 13, 25 (1st Cir. 2007)).

### III. **DISCUSSION**

     The defendants move for judgment as a matter of law, or, in the alternative, a new trial.   The Court denies their motions.

## A.   The defendants are not entitled to judgment as a matter of law on Rodriguez-Arce's claim of retaliation

The defendants argue that a reasonable jury could not find for Rodriguez-Arce.  The Court disagrees.

A Rule 50 motion may be granted when, after viewing the evidence in the light most favorable to the nonmoving party, "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."  Fed.R.Civ.P. 50(a); see also, Malone v. Lockheed Martin Corp., 610 F.3d 16, 20 (1st Cir. 2010)(holding that a court may only disturb a jury's determination when the evidence overwhelmingly points in favor of the moving party such that no reasonable jury could have returned a verdict adverse to that party).

Whether judgment as a matter of law is appropriate in the employment context depends on a number of factors, including the "strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law."  Reeves, 530 U.S. at 148-49.

Here, the defendants argue that Rodriguez-Arce failed to present sufficient evidence to take her retaliation claim to a jury.  To establish a *prima facie* claim of retaliation under the First and Fourteenth Amendments, Rodriguez-Arce had the burden of producing evidence from which a jury could reasonably conclude that: (1) she was engaged in protected activity; (2) the defendants committed an adverse action against her; and (3) the adverse action was motivated in

substantial part by her constitutionally-protected activity. Garayalde-Rijos v. Municipality of Carolina, 747 F.3d 15, 24 (1st Cir. 2014).

Rodriguez-Arce has satisfied the first two prongs of this claim. As the defendants concede in their motion, Rodriguez-Arce was engaged in protected conduct when she filed her letter detailing her relationship with Cruz-Calo with the human resources office. See Jackson v. Birmingham Bd. Of Ed., 544 U.S. 167, 179 n.3 (2005) (holding that "retaliation in response to a complaint about [proscribed] discrimination is discrimination"). A jury could also reasonably conclude that Rodriguez-Arce's suspension and subsequent termination in this instance amounted to an adverse employment action. See Lamboy-Ortiz v. Ortiz-Velez, 630 F.3d 228, 240 (1st Cir. 2010).

The debatable point is whether the adverse action against Rodriguez-Arce was motivated in substantial part by her protected activity. The jury concluded that Rodriguez-Arce presented adequate evidence to support a finding that defendants suspended and terminated Rodriguez-Arce for improper reasons, a conclusion with which the Court agrees.

The record, and testimony at trial, clearly indicates that Rodriguez-Arce maintained that she verbally notified the human resources department of sexual harassment well before receiving the letters notifying her of her suspension — and therefore her suspension was merely pretextual. The defendants urge the Court to review testimony at trial that indicated Rodriguez-Arce did not notify human resources of her relationship with Cruz-Calo until she sent her

confidential letter in May of 2011 — a letter that did not detail sexual harassment but, instead, asked for an investigation into allegations of *domestic abuse*. But to measure the persuasive value of the testimony at trial from human resources officers Damarys Velázquez and Lissette Hernández, the former director of the Ombudsman's human resources department, would require the Court to engage in a credibility determination. A jury has already taken the measure of the testimony offered from Velazquez and Hernáandez — and Rodriguez-Arce. The jury found Rodriguez-Arce's claim that she verbally notified the human resources office of her complaint of sexual harassment persuasive.

Next, the defendants point to Rodriguez-Arce's erratic and unprofessional behavior in early 2012 as justification for her ultimate termination. First, the Ombudsman's Office received a written complaint from a medical care provider who had encountered difficulties with Rodriguez-Arce's performance and allegations of abusive behavior. Following the receipt of the letter, a written reprimand was inserted into Rodriguez-Arce's personnel file. Shortly thereafter, Rodriguez-Arce visited the office of the Puerto Rico Telecommunications Board. At trial, Rodriguez-Arce testified that she visited the office in her personal capacity. Employees of the Telecommunications Office said that Rodriguez-Arce was abusive and erratic. After an internal review of these two incidents, the Ombudsman's Office terminated Rodriguez-Arce's employment — nine months after the receipt of Rodriguez-Arce's letter in May of 2011. But emphasizing these two incidents ignores the fact that Rodriguez-

Arce's theory of the case was that she had *already* been retaliated against.  Rodriguez-Arce argued at trial that the letters sent in early 2011 detailing her suspension constitute an adverse employment action.

That the defendants are displeased with the jury's verdict is understandable.  Both parties to this litigation took risks and refused to settle their dispute.  But the defendants have presented no grounds for disturbing the jury's verdict.  As such, we decline to do so here.

**B.   The defendants are not entitled to a new trial on the discrete issue of Title VII retaliation or to alter the judgment.**

In the alternative to their motion for a judgment as a matter of law, the defendants request an alteration to the judgment or a new trial pursuant to Federal Rule of Civil Procedure 59(a).  Rule 59(b) of the Federal Rules of Civil Procedure provides that a motion for new a trial must be filed no later than 28 days after the entry of the judgment.  Fed.R.Civ.P. 59(b).  Because the Court entered its order on May 21, 2014, and the defendants filed their motion for a new trial on June 18, 2014, the motion to for a new trial is timely under Rule 59(b).

The defendants request for a new trial on the discrete issue of retaliation is predicated on (1) the weight of the evidence was against the jury verdict; and (2) the jury was likely misled or confused by an erroneous instruction.  The Court disagrees.

The defendants take issue with the fact that despite supposedly "uncontroverted evidence" proving that there were permissible reasons

for Rodriguez-Arce's suspension and termination, the jury nonetheless found that the defendants retaliated against plaintiff after she raised allegations of sexual harassment. According to defendants, this means that the jury's verdict went against the great weight of the evidence, and therefore represents a miscarriage of justice. But it is simply inaccurate for the defendants to claim that these issues were established by uncontroverted evidence. To the contrary: conflicting evidence was presented on these issues by both sides. It was entirely proper for a reasonable jury, as the trier of fact, to weigh the evidence and arrive at its conclusion.

Next, the defendants charge that the Court erred in an instruction to the jury regarding one of the defendants' exhibits. However, even if this Court indulged the defendant's argument that it erred in instructing the jury on one of the exhibits, any such error seems harmless under the circumstances because the defendant has failed to show that the outcome of the case would have changed.

The Court does not find merit in the defendant's other attacks on the judgment. Viewing the contested evidence in the light most favorable to Rodriguez-Arce and making all credibility determinations and drawing all inferences in her favor, we cannot say there was no legally sufficient evidentiary basis for a reasonable jury to find that the defendants retaliated against Rodriguez-Arce.

**C.**  **The plaintiff is not entitled to back pay, reinstatement, or pre-and post-judgment interest.**

Rodriguez-Arce moves to alter or amend the judgment. Rule 59(e) of the Federal Rules of Civil Procedure provides that a motion to

alter or amend a judgment must be filed no later than 28 days after the entry of the judgment. Fed.R.Civ.P. 59(e). Because the Court entered its order on May 21, 2014, and Rodriguez-Arce filed her motion to reconsider two days later, the motion to amend is timely under Rule 59(e).

A district court has wide discretion to award equitable relief but must act consistently with the underlying goals of Title VII to eliminate discrimination throughout the economy. Che v. Massachusetts Bay Transp. Authority, 342 F.3d 31, 43 (1st Cir. 2003). Additionally, the Court assesses equitable relief in light of "the entire remedial fabric." Id.

Rodriguez-Arce contends that the Court should order her reinstatement and award back-pay. Reinstatement is an equitable remedy but falls within the discretionary authority of the Court. Velazquez v. Figueroa-Gomez, 996 F.2d 425, 428 (1st Cir. 1993). Several prudential matters counsel against reinstating Rodriguez-Arce: (1) Rodriguez-Arce has found alternative work; (2) Rodriguez-Arce engaged in a consensual workplace relationship that eventually turned sour, leading her to unsuccessfully accuse two Ombudsman's Office supervisors of sexual harassment; (3) while tension or ongoing hostility between parties is usually insufficient grounds for denying reinstatement, see Velazquez, 996 F.2d at 428, here Rodriguez-Arce alleged that retaliatory conduct permeated the office such that even members of the human resources office failed to act on her allegations of sexual harassment. As such, the Court declines to order Rodriguez-Arce's reinstatement.

In the First Circuit, "juries are generally entrusted with decisions on back pay when the jurors are already resolving issues of liability and compensatory damages." Johnson v. Spencer Press of Maine, Inc., 364 F.3d 368, 380 (1st Cir. 2004). Because the issue of back-pay was not presented to the jury, the Court declines to do so here. See also, Santiago-Negron v. Castro-Davila, 865 F.2d 431, 441 (1st Cir. 1989)(holding that practical reason suggests back pay be considered by the jury as one of the items of compensatory damages).

Next, the Court turns to Rodriguez-Arce's request for pre- and post-judgment interest. Because Rodriguez-Arce never presented a request for pre-judgment interest to the jury, the Court is precluded from issuing it now. Kolb v. Goldring, Inc., 694 F.2d 869, 875 (1st Cir. 1982); see also Cordero v. De Jesus-Martinez, 922 F.2d 11, 13 (1st Cir. 1990) (holding that the decision to award prejudgment interest in a federal question case lies within the sole province and discretion of the jury).

It is well established that federal law governs the entitlement to postjudgment interest in any federal civil suit. Vazquez-Fillippetti v. Cooperative de Seguros Multiples de Puerto Rico, 723 F.3d 24, 28 (1st Cir. 2013). The prevailing party in federal court is entitled to postjudgment interest "from the date of the entry of the judgment" at the rate fixed in the statute. 28 U.S.C. § 1961(a). As such, Rodriguez-Arce is entitled to post-judgment interest.

## IV.   CONCLUSION

Accordingly:

The defendants' motion for judgment as a matter of law, (Docket No. 101), is **DENIED**; the defendants' motions for a new trial and to alter the judgment, (Docket No. 108), are **DENIED**; the defendants' motion to alter the judgment, (Docket No. 108), is **DENIED**; the plaintiff's motion to alter judgment, (Docket No. 99), is **DENIED** in part and **GRANTED** in part: the Court **GRANTS** the plaintiff's request for post-judgment interest but **DENIES** her request for reinstatement, back pay, and pre-judgment interest.

     **IT SO ORDERED.**

     **In San Juan, Puerto Rico, March 31st, 2015.**

                        **S/ <u>JUAN M. PÉREZ-GIMÉNEZ</u>**
                        **JUAN M. PÉREZ-GIMÉNEZ**
                        **UNITED STATES DISTRICT JUDGE**